UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: WALLACE, RUSH, SCHMIDT, INC. | CIVIL ACTION<br><br>NO: 23-00196<br><br>SECTION: T |

## ORDER

Before the Court is an appeal from the bankruptcy court's ruling denying the Debtor's Motion to Re-Open Chapter 11 Case to Enforce Plan Provisions, R. Doc. 1-3, filed by Wallace, Rush, Schmidt, Inc. ("WRS or "Debtor"), pursuant to 11 U.S.C. § 350(b).[1] WRS filed its appellant brief (R. Doc. 4), to which the Kristina Claimants have filed an appellee brief in response. R. Doc. 5. WRS has filed a reply brief. R. Doc. 6. The Court has appellate jurisdiction pursuant to 28 U.S.C. § 158. After reviewing the briefs of the parties, the record in the case, and the applicable law, the judgment of the bankruptcy court is **AFFIRMED** for the following reasons.

## FACTUAL AND PROCEDURAL BACKGROUND

As summarized by the bankruptcy court, before the Debtor sought bankruptcy relief, the Claimants had asserted tort claims against the Debtor and others in state court arising out of an August 2016 accident involving multiple serious injuries and death. The Debtor sought bankruptcy protection two years after the 2016 accident before any judgment was rendered in those consolidated state court actions or before a settlement was reached with the Claimants.

---

[1] That provision states: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

1

The Debtor filed its Third Amended Plan of Reorganization Propounded by Debtor on June 20, 2018 (the "Plan"). The Debtor modified that Plan three times prior to confirmation: first on June 21, 2018 (the "First Plan Modification"); again on August 30, 2018 (the "Second Plan Modification"); and for the final time on September 6, 2018 ("Third Plan Modification"). The bankruptcy court confirmed the Plan on September 13, 2018.[2] As the bankruptcy court explained, the Confirmation Order specifically referenced and incorporated the Second Plan Modification and the Third Plan Modification, but not the First Plan Modification. R. Doc. 1-3, p. 3.

The Third Plan Modification classified the Claimants in Class 6 in the Plan and provided that any judgment or settlement of the Claimants' claims "shall be covered and paid by [the Debtor's] insurers," adding that "Debtor shall pay only any excess of a final judgment or settlement amount obtained during the life of the plan that is not covered by Debtor's insurance carriers . . . ." *Id.* According to the bankruptcy court, the Third Plan Modification established a "Reserve Fund" for the benefit of Class 6 Claimants to provide recovery over and above insurance proceeds. This Reserve Fund was to be funded by monthly installments of $4,000.00 and 30% of the company's income, less the monthly payment, each quarter. The deposits were to begin in 2018 and conclude in October 2023. The Reserve Fund has a cap of $2.5 Million, to be paid should any judgments be entered into the record assigning liability to the Debtor or settlement agreements to be entered into by the Debtor during the life of the Plan. *Id.* At the time the bankruptcy court confirmed the plan, the total of the claims amounted to about $29 Million. The Plan provided in part:

> Unless otherwise agreed to by all Class 6 Claimants, the Reserve Fund shall be distributed at the end of the five-year life of the Plan on a pro-rata basis in accordance with any final Judgment, or settlement agreement entered into regarding the amounts claimed by the Class 6 Claimants. Notwithstanding the foregoing, no distribution from the Reserve Fund shall be made absent a final judgment or settlement agreement reflecting the Debtor's obligation to pay one or more Class 6 Claimants; and, then such distribution shall not exceed the amount(s)

---

[2] This Court affirmed confirmation of the Plan in No. 18-9080, R. Doc. 15 (September 25, 2019)

> of any such judgments(s) [sic] or settlement agreement(s). If any funds remain in the Reserve Account, at the end of the five-year Plan period and after payment to all Class 6 Claimants who receive a final Judgment or enter into settlement agreement with the Debtor as provided for herein, any such remaining funds shall be the property of the Reorganized Debtor, Wallace, Rush, Schmidt, Inc.
> . . . .
> If and only if any excess Judgment of Liability against the Debtor above and beyond insurance coverage is rendered by the Federal or State Court proceedings or a settlement agreement has been entered into with the Debtor during the life of the Plan, such amount shall be paid by the Debtor pro-rata from the Reserve Fund as described hereinabove to Class 6 Claimants.
>
> *Id.*, pp. 3-4.

In its motion to the bankruptcy court, the Debtor sought to reopen the case under Section 350(b) of the Bankruptcy Code prior to the expiration of the 5-year term of the Plan, or October 13, 2023, for the purposes of "administration and finalization of the Debtor's Confirmed Plan." *Id.*, p. 5. As the bankruptcy court explained, the Debtor relied on a "Global Settlement" among Claimants, the Debtor, and one of its insurers to argue that the Plan should be reopened because the funds held in the Reserve Fund were now the property of the Debtor under the plain terms of the Confirmation Order and confirmed Plan.

The bankruptcy court denied the request to reopen, rejecting the Debtor's argument that the monetary settlement and payment of insurance proceeds to Claimants as well as the releases contained in the Settlement satisfied the Debtor's obligations under the Plan. The court first found that the Reserve Fund created by the Plan was designed to provide recovery over and above any recovery provided by the insurance proceeds. *Id.*, p. 7. The court found that a plain reading of the Settlement shows that the Debtor received only a partial release from liability for claims asserted by Claimants and covered by policies of the insurer. The court cited language in the Settlement that reserved to the Claimants the right "to seek recovery for any amounts [Debtor] has paid or will pay into reserve fund approved by the Bankruptcy Court…." Second, the bankruptcy court reasoned that the request to reopen the case was premature because conditions precedent had not

3

been met, namely whether funds remained in the Reserve Fund at the end of the five-year plan *and* after payment to all Class 6 Claimants who receive a final judgment or enter into a settlement agreement with the Debtor. Only then would any remaining funds be the property of the Debtor. The Court concluded that Debtor failed to demonstrate the existence of estate assets to administer, any relief that could be accorded the Debtor, or "other cause' that would justify reopening the case.

The Debtor has appealed the bankruptcy court's ruling

## LAW AND ANALYSIS

### A. Standard of Review

The standard of review for a bankruptcy appeal is the same standard used by an appellate court reviewing a district court proceeding.[3] Accordingly, the Court reviews the bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*.[4] A district court will only reverse the bankruptcy court's finding of facts if, upon review of the entire record, the court is left with the "definite and firm" conviction that the bankruptcy court erred.[5] The burden is on the appellant to demonstrate that the bankruptcy court's findings are clearly erroneous.[6]

A bankruptcy case may be reopened to "administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). A court's decision to grant or deny a request to reopen a case is committed to the sound discretion of the bankruptcy court and will be reviewed for abuse of

---

[3] *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir.1989).
[4] *See* Fed. R. Bankr.P. 8013; *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir.2000).
[5] *Anderson v. City of Bessemer City*, 479 U.S. 564, 573 (1985).
[6] *In re Work Const. Co., Inc.*, No. ADV 09-1032, 2010 WL 3081345, at *3 (E.D. La. Aug. 5, 2010), *aff'd*, 424 F. App'x 281 (5th Cir. 2011) (citing *In re Drehsen*, 190 B.R. 441, 442 (M.D.Fla.1995)).

discretion.[7] This Court finds no abuse of discretion or clear error in the bankruptcy court's decision.

### B. Debtor has failed to show either clear error or an abuse of discretion related to the bankruptcy court's ruling

The Debtor now argues the bankruptcy court has failed to interpret correctly the clear language in the Third Plan Modification by finding that the Plan established a Reserve Fund for the benefit of Class 6 Claimants to provide recovery "over and above insurance proceeds." The Debtor contends that the funds in the Reserve Fund were to be paid out only (1) if there was no judgment or settlement, (2) if the Debtor was required to pay any excess of any Judgment, or (3) if liability of the Debtor exceeds any insurance coverage. The Debtor also argues that the Reserve Fund was limited to $2.5 Million and the Global Settlement of $3 Million among Claimants, the Debtor, and its insurer exceeds that amount. In short, the Debtor argues the Plan should be reopened, because the Debtor has satisfied all of its obligations under the Plan and because the Reserve Fund was not initiated to supplement any insurance coverage to the Kristina Claimants but only for payment by the Debtor in the event of no settlement or inadequate settlement in an amount less than $2.5 Million.

The Kristina Claimants counter that the Plan established the Reserve Fund for the benefit of the Class 6 Claimants to supplement the Debtor's insurance proceeds and that, even after the Global Settlement, the Debtor's obligations with respect to the Reserve Fund remain in effect. Claimants argue that the bankruptcy court confirmed only the Third Amended Plan, which does indeed create a means for recovery over and above any recovery from the Debtors insurance proceeds. More importantly, Claimants assert that the Global Settlement Agreement released the liability of the Debtor only in part and only as to that particular insurer. Claimants assert they have

---

[7] *In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996).

not otherwise completely released their state and federal court claims as to any other insurers or to seek recovery of any amounts paid into the Recovery Fund said to be less than $600,000.

The Court has reviewed the language in the Global Settlement Agreement relied upon by the bankruptcy judge, R. Doc. 1-3, p. 7, and agrees with the Claimants that the release language in the agreement is not as broad as the Debtor claims:

> HOWEVER, this release is subject to and limited only by each Claimant's right: (1) to pursue [Reorganized Debtor] to the extent it carries other valid and collectible insurance issued by insurers other than [settling insurer] and/or any insurer corporately affiliated with [settling insurer group][;] (2) to pursue [Reorganized Debtor] to the extent it is an additional insured under [certain policy] issued by National Liability & Fire Insurance Company to Kristina's Transportation, LLC; and (3) to seek recovery for any amounts [Reorganized Debtor] has paid or will pay into the reserve fund approved by the Bankruptcy Court in *In re: Wallace, Rush, Schmidt*, U.S. Bankruptcy Court, E.D. La. Case No. 17-10698.

*Id.* The language therein clearly intends to limit the scope of the release. Moreover, as the bankruptcy court noted, the five-year life of the Plan had not expired at the time the bankruptcy court ruled. Nor has it yet to expire. Accordingly, the Court finds no error or abuse of discretion in the bankruptcy court's denial of the Debtor's Motion to Reopen at this time.

## CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the judgment of the bankruptcy court is **AFFIRMED**.

**New Orleans, Louisiana**, on this __29th__ day of September 2023.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**